UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM CANNON                                                                                          PETITIONER

V.                                                                              CIVIL ACTION NO. 3:07CV583 DPJ-FKB

LAWRENCE KELLY AND
CHRISTOPHER EPPS                                                                                       RESPONDENTS

ORDER

This petition for writ of habeas corpus is before the Court on the Report and Recommendation of Magistrate Judge F. Keith Ball. Judge Ball considered the petition, the response, and the state-court record, and concluded that habeas relief should be denied and the petition should be dismissed with prejudice. The Court, having considered the Report and Recommendation and the subsequent filings, finds that the Report and Recommendation should be adopted as the opinion of this Court.

I.      Background

In his petition, Cannon challenges two separate drug convictions. The first, Cause No. 01-149, related to drugs found during a March 26, 2001, traffic stop. During the stop, K-9 Deputy Captain Chris Picou of the Lincoln County Sheriff's Department discovered a canister containing crystal methamphetamine. Cannon initially denied but then confessed that the drugs were his—the admissibility of the confession is disputed. Cannon was tried and convicted of possession of methamphetamine with intent to distribute. The trial judge sentenced him to a thirty-year term of incarceration.

Cannon's second conviction in Cause No. 01-150 stemmed from a controlled purchase of methamphetamine on May 25, 2001, at the Cannon home. After searching the residence and grounds, officers found additional quantities of methamphetamine. Cannon again admitted that

the methamphetamine found on the property belonged to him, explaining that he had recently purchased the drugs in Texas for around $7,000.  This confession is also disputed.  Cannon was tried and convicted of one count of delivery of methamphetamine and one count of possession with intent to distribute.

After considering Cannon's habitual offender status and Mississippi's repeat drug offender statute, the trial court sentenced Cannon to sixty years on each count, to be served consecutively to each other and to Cannon's previous thirty-year sentence.  Cannon appealed, the cases were consolidated, and the convictions and sentences were affirmed.  After filing a motion for post-conviction relief in state court, which was denied in an order written by the Honorable James E. Graves, Cannon filed the instant petition for writ of habeas corpus.

The parties then presented a substantial record.  Cannon's petition, which largely tracked his 103-page state-court motion for post-conviction relief, enumerates twenty-two grounds for relief.  Also before the Court are Cannon's two Objections to the Report and Recommendation [21, 22], Respondents' Response in Opposition to the Objections [24], Cannon's Rebuttal in Support of his Objections [26], plus a state-court record of more than 2,000 pages.  The Court observes all of this to explain that although this Order is limited to a few discrete issues, the Court has nevertheless conducted an exhaustive and time-intensive review.  Finally, the issues that will be addressed have been selected not for disagreement with the thorough and well-reasoned Report and Recommendation but to respond specifically to certain arguments Cannon raised in his objections.  Those issues not addressed herein would not change the ultimate conclusion that the petition should be denied.

II.     Analysis

    A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and more particularly 28 U.S.C. § 2254(d),[1] provides the standard of review. The section "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, ––– U.S. –––, 131 S. Ct. 1305, 1307 (2011) (citations omitted).

> Pursuant to AEDPA, federal-habeas relief cannot be granted "unless the challenged state court proceeding resulted in: (1) 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States', 28 U.S.C. 2254(d)(1); or (2) 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'. 28 U.S.C. 2254(d)(2)".

*Foster v. Quarterman*, 466 F.3d 359, 368 (5th Cir. 2006) (citation omitted). "A decision is not unreasonable merely because it is incorrect; to be unreasonable, it must be both incorrect and objectively unreasonable." *Id*. Thus, relief may be granted only "where there is no possibility

---

[1]The section states as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  And "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*.  Finally, under § 2254(e)(1), "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  "If this standard is difficult to meet, that is because it was meant to be.  [But] . . . § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings."  *Richter*, 131 S. Ct. at 786.

Cannon frequently argues that because the state courts never directly addressed some of his claims for relief, their findings are not entitled to this highly deferential standard.  He supports the position with several older opinions that are not directly on point, but *Richter* addresses this very issue.  There, the Court first noted that "[t]here is no text in the statute requiring a statement of reasons.  The statute refers only to a 'decision,' which resulted from an 'adjudication.'"  *Id.* at 784.  The Court concluded:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Id.*  Thus, "a habeas court must determine what arguments or theories . . . *could have supported* the state court's decision [as Judge Ball did]; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]."  *Id*. at 786 (emphasis added).

4

B.   The Record

Cannon contends that he is entitled to an evidentiary hearing.  Most prominently, he desires a hearing on the admissibility of his confessions, but in *Cullen v. Pinholster*, the United States Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  ––– U.S. ––––, 131 S. Ct. 1388, 1398 (2011).  Exceptions exist under 28 U.S.C. § 2254(e)(2)),[2] but they are "narrow" and present a "high bar for introducing evidence in a § 2254(d) case."  *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011) (reversing district court's decision to allow evidentiary hearing).  "As the Court explained in *Pinholster*, "[t]he focus of that section is . . . on limiting the discretion of federal district courts in holding hearings."  *Id.* (citing *Pinholster*, 131 S. Ct. at 1401 n.8).  Cannon's

---

[2]Section 2254(e)(2) states as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

  (A) the claim relies on—

  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

plea for a hearing is based on abrogated authority, and he has not established the requirements for expanding the record. *Id.*[3]

In addition, the Court must reject the argument that Cannon is entitled to a hearing because the state precluded him from developing a record. As his primary example, Cannon claims that during the first trial he attempted to object to a confession based on Mississippi Rule of Evidence 410. As he describes it, "the trial judge, as was his wont, interjected the following directive, treating the courtroom as his personal fiefdom: 'That is the situation in this district, Mr. Camp. No officer has any authority [to enter plea negotiations] period. The D.A. is the only one who has authority.'" Pet.'s Mem. [22] at 7. Cannon contends that the trial judge thus shut down the Rule 410 argument entitling him to a hearing.

The record does not support the characterization. First, Cannon's argument fails to acknowledge the pretrial hearing on his motion to suppress, *see* Doc. 19-12 at 19, during which he was given a full opportunity to call and examine the witnesses without any interference. *See* Doc. 19-7. Second, Cannon allegedly confessed on more than one occasion, and his only trial objection to the testimony regarding his initial confessions was foundational—an objection the trial judge essentially sustained. Doc. 27 at 55. Third, once Cannon objected under Rule 410, he limited the objection to a single conversation that occurred when his attorney was present, *id.* at 59, but did not raise the same objection to the "numerous" prior confessions. *See* Doc. 27 at 67 (Picou testimony that Cannon admitted possessing drugs "numerous times"). Finally, when Cannon made his Rule 410 objection, the trial judge did observe the limited capacity of an

---

[3]*Pinholster* would not apply to claims that are not decided on the merits, but the Court finds that those limited issues do not merit an evidentiary hearing.

officer in that venue to negotiate a plea, but contrary to Cannon's position, the trial judge then allowed Cannon's attorney to continue arguing the point. Doc. 27 at 60. Cannon had an opportunity to develop the record, and he is not entitled to an evidentiary hearing on his petition. *McCamey*, 658 F.3d at 497.[4]

    C.    Cause No. 01-150

The Court will not address the second trial in any detail because the Report and Recommendation amply covers the issues. As a general matter, this conviction came as the result of a controlled purchase of drugs by a confidential informant from Cannon at Cannon's home. Cannon later confessed after receiving his *Miranda* warning, and he has failed to show that the state appellate court was objectively unreasonable in affirming the trial court's admission of the confession. Likewise, his concerns over alleged *Brady* violations fall short of the § 2254(d) standard for the reasons Judge Ball noted.

Finally, it would not be objectively unreasonable for the state court to find a lack of prejudice or materiality as to other claims given the overwhelming evidence of guilt. For example, the jury received an audio recording of the conversations between Cannon and the confidential informant related to the buy; the $500 used for the controlled purchase found in Cannon's pocket; and various items found in or around his home such as a recipe for manufacturing methamphetamine, two containers holding crystal methamphetamine (119.2 and 13.3 grams), 400 ziplock baggies in a camouflage container, various other containers with white residue and a funnel, metallic knuckles, and envelopes with large sums of cash. The jury also

---

[4]This issue provides an example of the overblown rhetoric often aimed at the trial court judge as addressed below.

learned that his house was a heavily fortified metal building with audio and visual-surveillance equipment (including infrared cameras for night vision) placed on all four sides with monitors on the top and bottom floors of the home.  In light of all that, Cannon has not shown that the state-court conclusions on the remaining issues—especially those dealing with ineffective assistance of counsel—satisfy the rigorous standards of § 2254(d) and/or § 2254(e).

>   D.   Cause No. 01-149

>>   1.   Confession—Claim I

Cannon objects to the admission of his confession in Cause No. 01-149.  This ruling is central to the magistrate judge's analysis regarding Cannon's other claims.  For example, it is difficult to find that the State's implied rulings on the materiality of the attorney-conflict and *Strickland* claims were "objectively unreasonable" if Cannon gave an admissible confession that was consistent with the physical evidence.  The confession claim is also an issue for which Cannon augmented his position through his objections and separately filed memorandum of law.  The Court will therefore address it in greater detail.

As noted, Cause No. 01-149 relates to drugs found during a traffic stop on March 26, 2001.  During a road-side conversation between Cannon and Deputy Picou, Picou noticed a camouflaged container on the ground near Cannon's vehicle that held methamphetamine and other drugs.  Cannon initially denied and then admitted possession.  There is no dispute that Cannon and Picou had several conversations regarding the drugs and that Picou spoke with Cannon about becoming an informant.  Cannon claims that the trial court erred in failing to suppress the confession because the State was offering a deal, making the comments part of an inadmissible plea negotiation and otherwise involuntary.

a.	Voluntariness

Starting with the discussions about becoming an informant, Cannon must present the issue in terms of a constitutional violation.  *See Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (holding that a state court's evidentiary rulings can present cognizable habeas claims if they violate a "specific constitutional right or render the petitioner's trial fundamentally unfair"). Cannon attempts to clear that hurdle by arguing that the "promise of leniency resulted in a confession." Pet.'s Objection [21] at 24.  He elaborates in his memorandum that the confession was not voluntary because "the test for determining whether a statement is voluntary is 'whether the confession was 'exacted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight [or] by the exertion of any improper influence.'"  Pet.'s Mem. [22] at 8–9 (citing *Hutto v. Ross*, 429 U.S. 28, 31 (1976)).

Cannon's legal authority is no longer valid—assuming it ever was.  In *Arizona v. Fulminante*, the United States Supreme Court expressly rejected as dicta the standard Cannon relies upon for determining the voluntariness of a confession.  499 U.S. 279, 285 (1991).[5]  The Court explained that trial courts must instead consider the totality of the circumstances.  *Id.* at 286.  And as stated in *Schneckloth v. Bustamonte*, due process precludes admission of a confession where "a defendant's will was overborne and his capacity for self-determination critically impaired." 412 U.S. 218, 225 (1973).  That is the test, and

> the fact that certain promises may, or may not, have been made by law enforcement to secure the confession are not the sole determinant factor we evaluate in determining whether the confession will be upheld, for "[t]he Constitution does not prohibit every element which influences a criminal suspect

---

[5]Cannon actually cites *Fulminante* for its discussion of harmless error analysis but fails to acknowledge its rejection of the test upon which he relies. Pet's Mem. [22] at 10–11.

9

> to make incriminating admissions." *United States v. Washington*, 431 U.S. 181,
> 187, 97 S. Ct. 1814, 52 L.Ed.2d 238 (1977).  Consequently, "a confession is not
> involuntary merely because the suspect was promised leniency if he cooperated
> with law enforcement officials." *United States v. Bye*, 919 F.2d 6, 9 (2d Cir.
> 1990) (citation and internal quotation marks omitted).

*United States v. Santiago*, 410 F.3d 193, 202–03 (5th Cir. 2005).  This is "especially [true] when the defendant had experience with law enforcement [as Cannon certainly did] and should have been hesitant to rely on such representations." *United States v. Turner*, — F.3d —, 2012 WL 716885, at *6 (5th Cir. Mar. 7, 2012) (citing *Santiago*, 410 F.3d at 202–03)).

      Returning to the record, Picou's testimony during the suppression hearing and at trial indicates that he advised Cannon of his rights at the scene of the traffic stop and that in the following days Cannon confessed to possession of the drug-filled canister "numerous times." Doc. 27 at 67.  The first confession occurred a few days after the traffic stop when Picou went to Cannon's house to discuss (1) the drugs found at the stop, and (2) whether Cannon was interested in working with law enforcement.  Doc. 19-7 at 38–39; Doc. 27 at 58.  Cannon's only trial objection to this testimony was that the prosecution had not laid a proper foundation regarding the timing of the *Miranda* warning—*i.e.*, whether it occurred at the traffic stop or later during the visit to Cannon's home.  But this was a non-custodial conversation for which no *Miranda* warnings were required, and the parties seemed satisfied when the trial court instructed the State to lay a foundation as to the timing issue.  *See* Doc. 27 at 55–56.  Thus, there was no substantive contemporaneous objection.

      As for any offers made before the initial confession, Picou and Cannon clearly explored the possibility that Cannon could become an informant, but Picou testified that he presented the idea to other law-enforcement officials *after* Cannon confessed and expressed interest in

10

becoming an informant. 19-7 at 38. Consistent with that testimony, Picou stated at trial that he spoke with the District Attorney "at a later date." Doc. 27 at 65. Picou also testified that he and Cannon "didn't do anything until [he] spoke with him [Cannon] and his attorney" in the parking lot of Hal & Mal's, a restaurant in Jackson, Mississippi. *Id*. at 59. Picou then confirmed that he had no authority to make a deal and that Cannon confessed before Picou ever spoke with the District Attorney. *Id.* at 68. Thus, a reasonable reading of the transcript would suggest that a deal was discussed but not reached when the first confession occurred.

When Picou began to inform the jury about his conversation with Cannon and counsel at Hal & Mal's, Cannon raised—for the first time—his objection under Mississippi Rule of Evidence 410. The objection was limited, however, "to the testimony from the officer about any conversations that happened at this Hal & Mal's." Doc. 27 at 59 (argument by Cannon's attorney). Thus, the Rule 410 objection did not address the earlier confessions that Picou recounted without a substantive contemporaneous objection. *See Wells v. State*, 903 So. 2d 739, 742) (Miss. 2005) ("Any claim is waived for failure to raise a contemporaneous objection.").

The standard of review under § 2254(d) is stiff, though not impossible to meet. The question is whether the State's ruling was "objectively unreasonable," *i.e*., not debatable among reasonable jurists. *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000). Here, it is not clear what Picou may have precisely offered Cannon—if anything—or when it was offered. But even assuming he offered leniency, and assuming further that the claim was not barred for lack of a contemporaneous objection, "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials." *Santiago*, 410 F.3d at 203.

Cannon has cited no factually relevant authority from the United States Supreme Court supporting his position. *See Richter*, 131 S. Ct. at 786 (reiterating "requirement that the state court's decision be evaluated according to the precedents of this Court" even if the state was unaware of that precedent). Nor has he identified any evidence demonstrating that the State would have been objectively unreasonable in finding that Cannon's will was never overbourne as to any of these confessions. *Schneckloth*, 412 U.S. at 225. Finally, any prejudice as to the confession at Hal & Mal's is diminished by the admission of his prior confessions. Cannon falls short of the § 2254(d) standards.

      b.  Rule 410

Cannon suggests that Magistrate Judge Ball ignored his Rule 410 argument, but Judge Ball correctly noted that "[t]his argument presents an issue of purely state law and raises no cognizable basis for habeas relief." Report and Recommendation at 28. The Court agrees. Moreover, the objection applied to only one of multiple confessions which further diminishes the claim that an evidentiary mistake under Rule 410 amounts to a constitutional violation. Cannon has failed to establish that the State's ruling was objectively unreasonable.

      c.  Other Evidence

It should finally be noted that the confession was not—as Cannon states—"the only evidence directly linking Petitioner to the methamphetamine." Pl.'s Mem. [22] at 10. First, regarding the stop, Officer Picou testified that a syringe was found in Cannon's vehicle. He also testified that the methamphetamine was found "probably ten feet to the right of [Cannon's] vehicle." Doc. 27 at 53. And when Picou saw it, Cannon was turned away but denied it was his without even looking to see what Picou found. *Id.* at 52. The drugs were in small ziplock plastic

baggies found inside a plastic container wrapped with camouflage duct tape, a system Cannon was known to use. *Id*. at 52–53.  Second, the jury heard from the confidential informant Joseph Burns that he had an ongoing agreement to purchase methamphetamine from Cannon. *Id.* at 89.  Third, as in Cause No. 01-150, the jury learned from Officer Dustin Barfield that a search warrant was issued less than three weeks *before* the stop and that authorities found a number of items linking Cannon to the drugs found at the traffic stop.  For example, the officers found a plastic container wrapped in camouflage duct tape holding 400 small ziplock plastic baggies—*i.e*., the same type container and baggies found at the traffic stop.  *Id.* at 92.  The officer stated that the baggies were the type he typically sees in drug transactions.  *Id.* at 96.  Barfield also testified that the search revealed other evidence indicative of drug trafficking like a black book with phone numbers and other notes plus envelopes containing large sums of cash.  *Id.* at 94.  Finally, the jury learned that Cannon's home was heavily fortified with a protective steel gate secured by several padlocks and a chain, video surveillance cameras on all four sides of the structure with night vision, a homemade steel screen door with deadbolts, no visible windows, and an "escape hatch" to the roof.  *Id.* at 95–96.  In sum, the confession was not the only evidence linking Cannon to the drugs found in the camouflage container at the scene of the stop, and this other evidence buttresses the State's findings.

         2.      Evidentiary Rulings—Claims VI, X

Cannon contends that essentially all of the evidence mentioned in the preceding paragraph should have been excluded under Rule 404(b) (Claim VI).  He also argues that evidence regarding his intent to sell was inadmissible (Claim X).  The magistrate judge concluded in his Report and Recommendation that Claim X is barred, and this Court agrees.  As

for Claim VI, the magistrate judge concluded that a violation of a state evidentiary rule does not justify granting habeas relief.  Report and Recommendation at 29.  Again the Court agrees.  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (federal habeas court does not review state court's interpretation of its own law).  Finally, the magistrate judge noted that evidentiary issues can create constitutional concerns, but given Cannon's confessions and the limiting instructions, the State's ruling on these matters should not be disturbed under § 2254.  Report and Recommendation at 30.  The Court also agrees with this analysis, but would add two more points.

     First, the Mississippi Court of Appeals noted that "Cannon failed to object to the admission of some of the evidence offered by the State.  He will not be heard to object to that evidence for the first time on appeal."  *Cannon v. Mississippi*, 918 So. 2d 734, 741 (Miss. Ct. App. 2005) (citing Miss. Code Ann. § 99-39-21).  And although the appellate court did not identify the specific evidence it had in mind, the record reflects no contemporaneous Rule 404(b) objections to the disputed "other-acts" evidence.  *See* Doc. 27 at 50–69, 77–97.  As a result, those claims are barred in this Court.  *See Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995).

     Second, to the extent Cannon could somehow overcome that bar—and to the extent he argues that the admission of this evidence is significant enough to create due process concerns—the claim falls short.  The trial judge weighed the issues on the record.  *See* Doc. 27 at 82, 87; *see also United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (explaining necessary evaluation under Rule 404(b)).  And admitting evidence of prior drug deals along with the physical evidence found in Cannon's home fell comfortably within the trial court's discretion.  *See United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (finding that evidence

that defendant sold drugs to witness on a number of prior occasions was "relevant, for example, to the issues of motive, opportunity, intent, and plan, and therefore [was] admissible under Rule 404(b)"). Finally, there exists a strong argument that this evidence—especially the containers—was intrinsic to the charged offenses and therefore not subject to Rule 404(b) anyway. *See United States v. Rice*, 607 F.3d 133, 141 (5th Cir.) (alteration in original), *cert. denied*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 356 (2010) (explaining distinction between intrinsic and extrinsic evidence). In any event, the State's decision to affirm easily survives under § 2254(d).

Although the recommendation from the magistrate judge was certainly accurate, the Court addressed these further issues because the strength of the admissible evidence buttresses the verdict and further diminishes Cannon's claimed prejudice as to other claims.

   3. Bias

According to Cannon, the trial judge was not only "just plain wrong but . . . also prejudiced, corrupt and unfit to preside . . . ." Pet.'s Mem. [22] at 2. The Mississippi Appellate Courts rejected the claim, as did Judge Ball. And as noted before, much of the rhetoric falls short of the record—like the claim that the judge "treat[ed] the courtroom as his personal fiefdom" by squelching Cannon's Rule 410 argument. Pet.'s Mem. [22] at 7.

Likewise hollow is the claim that the "trial judge utilized evidentiary rulings to accomplish his goals." *Id*. at 12. Cannon explains that the judge's rulings under Rule 404(b) reflected "misfeasance approaching malfeasance." To begin with, the rulings were probably correct. But Cannon asserts that statements made during those rulings evidenced bias because the court concluded that the extrinsic evidence spoke to "'*modus operandi*' and would show 'predisposition.'" Doc. 22 at 12–13. Such statements, made while fulfilling the duty to weigh

the Rule 404(b) issues on the record, hardly show constitutionally-infirm bias. The Fifth Circuit itself has explained that extrinsic evidence "would contribute to a showing of knowledge and intent through demonstration of *a modus operandi*." *United States v. Williams*, 900 F.2d 823, 826 (5th Cir. 1990). Likewise, the court has held that extrinsic evidence can be "relevant to show [defendant's] *predisposition* to commit the charged offense." *United States v. Chukwurah*, 5 F.3d 1495, at *1 (5th Cir. 1993) (unpublished table decision) (emphasis added). Perhaps a more artful way to articulate the issue comes from the seminal Fifth Circuit case on point, *United States v. Beechum*, in which the court held, "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." 582 F.2d at 911. Here, the trial judge used the word "predisposition" in conjunction with several other factors relevant to the necessary intent element of the distribution charge. The ruling reflects no bias and no objectively unreasonable rulings from the state court.

Having said all that, the record is not entirely clean. For example, it appears that during a sentencing in another case the trial judge asked the defendant whether he would testify against Cannon. Read in the light Cannon offers, the statement would be troubling, but when Cannon's counsel raised the issue in a motion to recuse, the trial judge quickly rejected the suggestion that he "asked" the witness to testify. The judge explained instead that he asked "him would he testify." Doc. 19-14 at 70. The distinction is somewhat unclear on a cold record, but inquiring about cooperation is customary during sentencing. Regardless, Cannon has not created a sufficient record to overcome his burden with respect to these statements. As for Cannon's sentencing, it appears that the judge referenced information that was not in the record, but there

is no evidence under the applicable burden that is sufficient to show the judge had *ex parte* communications *with prosecutors or law-enforcement officers* as Cannon insinuates. Nevertheless, the judge followed the mandates of state statute, and the appellate courts otherwise addressed the issue in a manner that was not objectively unreasonable.

On whole, the trial transcripts reveal relatively few objections, and the rulings went both ways. It was hardly the "*Alice in Wonderland*" proceeding Cannon described. Pet.'s Mem. [22] at 5. More to the point, the state court was not objectively unreasonable in rejecting those portions of the bias claim that were not procedurally barred.[6]

        4.      *Brady* Violation—Claim I, II, VIII[7]

Cannon claims that the State's confidential informant, Joseph Burns, received a deal in exchange for his testimony that was never disclosed. Cannon also suggests that Burn's testimony during the trial was false and that the prosecution knowingly presented false testimony. Neither argument would merit relief.

Cannon was certainly entitled to discovery of any such deals, *see Brady v. United States,* 397 U.S. 742 (1970); *Giglio v. U.S.*, 405 U.S. 150 (1972), and the record reflects that the prosecution agreed to provide it. *See* Doc. No. 19-7. But during a recess in Cause No. 01-149, Burns pleaded guilty in an unrelated case. He then testified that no promises had been made and that he expected nothing in return. Doc. 27 at 89. The trial judge confirmed—outside the presence of the jury—that "there were no promises made and the transcript will reflect there was

---

[6]Even if the Court were to consider all procedurally barred claims, none of them meets the high standards of § 2254.

[7]Cannon makes a similar claim as to Cause No. 01-150 but the issue is even less compelling in that case.

no recommendation made." Doc. 27 at 83–84. Cannon rebuts that evidence by observing that after trial, prosecutors intervened on Burns's behalf in another court. Burns also testified during Cause No. 01-150 that he wanted to do anything he could to help himself, but he still denied any deals.

Because the state court did not expressly address the *Brady* argument, Cannon must "show[] there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. The Report and Recommendation identifies two: (1) Cannon's circumstantial evidence of a deal before Burns's testimony in Cause No. 01-149 is not sufficient; and (2) Cannon failed to show prejudice. *See United States v. Bagley*, 473 U.S. 667, 678 (1985). The magistrate judge is correct. The evidence of a deal before his testimony is simply too weak, under the applicable standards, for this Court to reject a conclusion that no deal had yet been made. But even if Cannon met that burden, a finding of immateriality by the State would not be objectively unreasonable. Burns's testimony in Cause No. 01-149 was limited to his prior drug transactions with Cannon. The jury also heard Cannon's confession that the drugs in this case were his. Plus, there was a wealth of other evidence found at his house supporting the verdict. *See Banks v. Thaler*, 583 F.3d 295, 329 (5th Cir. 2009) ("[E]vidence of Banks' guilt is so overwhelming that his *Brady* claim would still fail."). Again, the question is not whether the state court was correct but whether it was objectively unreasonable. Cannon's *Brady*-related arguments fall short of his considerable burden.

  E.  Forfeiture

Finally, Cannon also objects to Judge Ball's conclusion that his forfeiture claims are not cognizable under § 2254 because these claims do not challenge his confinement. Cannon points

to *Hampton v. Thaler*, a two paragraph, unpublished, *per curiam* opinion. 408 F. App'x 827 (5th Cir. 2011). There, the Fifth Circuit considered the district court's denial of a prisoner's 28 U.S.C. § 2254 application challenging a disciplinary conviction. The disciplinary conviction resulted in forfeiture of $710 from the prisoner's inmate account and the loss of other privileges. The Court considered the liberty interest separately from the forfeiture issue, and with regard to the latter, merely noted,

> the district court did not address the issue below; the district court did not determine whether the claim is cognizable under 42 U.S.C. § 1983 or § 2254 and, if so, whether the procedural due process requirements of *Walff v. McDonnell*, 418 U.S. 539, 545-66, 94 S. Ct. 2936, 41 L. Ed. 2d 935 (1974), were satisfied.

*Id.* at 827; *see also Emmett v. Director Tex. Dep't of Criminal Justice*, 379 F. App'x 366 (5th Cir. 2010) (using identical language in another case of a challenge to forfeiture of money in an inmate's account following a disciplinary conviction).

To begin with, the unpublished opinions in *Hampton* and *Emmett* merely mention that the district courts failed to address "whether" the challenge to the forfeitures were cognizable under § 2254 *or* § 1983. That hardly amounts to a holding that § 2254 provides relief for a civil forfeiture. Regardless, both cases are distinguishable because they deal with the disciplinary seizure of money from an inmate's account. Cannon is protesting the accuracy of a separate civil state-forfeiture proceeding.

Finally, other courts have opined that § 2254 "may not be used as a vehicle for challenging a civil forfeiture judgement or decree by a state court." *Tharpe v. Quarterman*, Civil Action No. 4:07cv494, 2007 WL 2491855, at *1 (N.D. Tex. Sept. 5, 2007) (citing *Ozoroski v. Klem*, No. Civ. A. 04-561, 2004 WL 1446046, at *16 n.16 (10th Cir. Jan. 24, 1997) (observing "the accuracy of the [state] forfeiture proceedings falls beyond this Court's province on habeas

corpus review"); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) ("More importantly, the quality of counsel's performance during the prior civil forfeiture is irrelevant in the present criminal case, and could not form the basis for a habeas corpus claim."); *Bowen v. United States*, No. Civ. A. 7:05cv37, 2005 WL 1676668, at *2 (M.D. Ga. June 29, 2005) ("A writ of habeas corpus under 28 U.S.C. § 2254 is available for persons in custody pursuant to the judgment of a State court. Although petitioner argues that the imprisonment of his property violates his constitutional rights § 2254 cannot be used to challenge the forfeiture of the funds seized."); *Dawkins v. United States*, 883 F. Supp. 83, 85 (E.D. Va. 1995) ("Nowhere does [28 U.S.C. § 2255] authorize collateral attacks on civil administrative forfeitures in an effort to secure the release of forfeited property or its cash equivalent.")); *see also Van Lang v. St. Lawrence*, No. CV406-119, 2006 WL 1653630, at *1 (S.D. Ga. June 7, 2006) ("Because state civil forfeiture proceedings may not be challenged using habeas corpus pursuant to § 2254, this case should be DISMISSED without prejudice."); *Maxie v. Simpson*, Civil Action NO. 5:06-CV-P106, 2006 WL 2355843, at *2 (W.D. Ky. Aug. 8, 2006) (noting that the petitioner's state forfeiture claim "does not appear to fall within the ambit of § 2254").  The Court finds Judge Ball's conclusion was not in error.

III.   Conclusion

In sum, the Court finds that the Report and Recommendation of Magistrate Judge F. Keith Ball should be adopted in its entirety and this action should be dismissed with prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 29th day of March, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE